UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANGELA CHRISTINE TODD,
    Plaintiff,

Case No. 1:16-cv-541
Dlott, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 8), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply

(Doc. 17).

**I. Procedural Background**

Plaintiff protectively filed an application for DIB on August 6, 2012. Plaintiff alleged

disability since November 8, 2011, due to "[n]eck injury going down both arms, mid back and

lower back"; "[s]pine c-4 thru c-7 two fusions & muscle & soft tissue etc."; "[a]rms muscle &

tissue damage from spine issues (c-4/c-7)"; "spine mid back"; "[s]pine lower back nerve damage

goes down [through] both legs"; "[h]eadaches from spine c-4 [through] c-7"; high blood pressure

treated with medication; "[e]motional distress from pain"; and "[w]eak[]ness in hands and arms

from c-4 [through] c-7 spine." (Tr. 231). Plaintiff's application was denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before

ALJ Penny Loucas. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ

hearing. On November 19, 2014, the ALJ issued a decision denying plaintiff's DIB application.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §

423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or
mental impairment – *i.e.*, an impairment that significantly limits his or her
physical or mental ability to do basic work activities – the claimant is not
disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the
listings in Appendix 1 to Subpart P of the regulations and meets the duration
requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her
past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not
disabled. If the claimant cannot make an adjustment to other work, the claimant
is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-

(v), 404.1520(b)-(g)).

2

The claimant has the burden of proof at the first four steps of the sequential evaluation

process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the

claimant establishes a prima facie case by showing an inability to perform the relevant previous

employment, the burden shifts to the Commissioner to show that the claimant can perform other

substantial gainful employment and that such employment exists in the national economy.

*Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff met] the insured status requirements of the Social Security Act through December 31, 2016.

2. The [plaintiff] has not engaged in substantial gainful activity since November 8, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease of the cervical spine status post fusion (C5-6 and C6-7), osteoarthritis and situational anxiety (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: She can occasionally push and pull bilaterally. She can never climb ladders, ropes or scaffolds. She can occasionally climb ramps or stairs. She can frequently balance and crawl. She can kneel and crouch on an unlimited basis. She can frequently perform bilateral overhead reaching. She must avoid unprotected heights. She has no limits in her memory. She can maintain her concentration, persistence or pace over a normal eight-hour workday and work week. She can interact with the general public, co-workers and supervisors but she should not be required to perform tasks involving mentoring, persuasion or conflict resolution. She is limited to routine type work where there are no demands for fast, machine paced, high

3

production quota type work or piece rate type work. The [plaintiff] would be off task 10% of the time.

6. The [plaintiff] is capable of performing past relevant work as a cosmetologist and title clerk. This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 CFR 404.1565).[1]

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 8, 2011, through the date of [the ALJ's] decision (20 CFR 404.1520(f)).

(Tr. 14-26).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[1] The ALJ relied on the VE's testimony to find that plaintiff's past relevant work as a cosmetologist was skilled work performed at the light level of exertion and her past relevant work as a title clerk was skilled work performed at the sedentary level of exertion. (Tr. 25).

4

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff alleges the following errors: (1) the ALJ erroneously found that plaintiff had the residual functional capacity (RFC) to perform light work in the absence of a supporting medical assessment; (2) the ALJ failed to properly evaluate plaintiff's multi-level degenerative disc disease with lumbar and cervical radiculopathy; (3) the ALJ failed to properly weigh the treating physician's medical opinion in accordance with 20 C.F.R. § 404.1527; and (4) the ALJ improperly assessed plaintiff's credibility. (Docs. 8, 17).

### 1. Weighing of the medical sources' physical functional capacity assessments

Plaintiff alleges as her first and third assignments of error that the ALJ erred by finding she had the RFC to perform light work when no treating or examining physician assessed plaintiff as capable of performing work at this exertional level.[2] (Doc. 8 at 2). The gist of plaintiff's argument is that the ALJ improperly weighed the medical opinion evidence and erred

---

[2] The Court will consider plaintiff's first and third assignments of error together because they are closely-related and the arguments plaintiff offers in support of them are intertwined.

by crediting the opinions of the non-examining state agency physicians over the opinions of the treating and examining physicians.

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. § 404.1527(e)(2). Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). *See also Moore v. Astrue*, No. CIV.A. 07-204, 2008 WL 2051019, at *5-6 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.,* 186 F. App'x 642, 647 (6th Cir. 2006)). *See also Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004) (the RFC determination, which is part of the disability evaluation, is expressly reserved for the Commissioner).

Under the treating physician rule, an ALJ must give "controlling" weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R § 404.1527(c)(2). The opinion of a non-treating medical source is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6). The

6

opinion of a non-treating but examining source is generally entitled to more weight than the opinion of a non-examining source. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. § 404.1527(c)(1). Under the Social Security regulations, "a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . may constitute substantial evidence . . . adverse to the claimant" in a disability proceeding. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (quoting *Richardson,* 402 U.S. at 402). In addition, the opinions of state agency medical and psychological consultants may be entitled to significant weight where they are supported by record evidence. *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(i)). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinion and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 404.1527(c)(3).

Here, the ALJ evaluated the medical evidence prior to the date last insured, including the medical source opinions, and found that plaintiff was capable of performing her prior relevant work as a cosmetologist and title clerk. (Tr. 25). Plaintiff alleges the ALJ committed several errors in weighing the medical evidence and formulating the physical RFC. Plaintiff alleges that the ALJ erred by failing to give "controlling" weight to the opinions of treating physician Dr. Alfred Khan, M.D., and consultative examining physician Dr. John Wolf, M.D., and by ignoring the conclusions of consultative examining physician Dr. Susan Stegman, M.D. (Doc. 8 at 14-21). Plaintiff alleges that the ALJ instead erroneously credited the report of the non-examining

7

state agency medical source dated March 2013 (Tr. 72-89), which she alleges "predated all medical treatment received." (Doc. 8 at 14, 19). In her reply brief, plaintiff alleges that the ALJ erred by rejecting examining source opinions finding that she was either restricted to "sedentary or less activity" or that her physical condition met or equaled a listing.[3] (Doc. 17 at 4).

The ALJ did not err by improperly weighing the medical opinion evidence. First, the ALJ did not violate the treating physician rule by failing to give "controlling weight" to a medical opinion from Dr. Khan. (Doc. at 14-19, 20-21). "[A]pplication of the 'treating physician rule' is contingent upon a treating physician actually giving a medical opinion." *Rivera ex rel. H.R. v. Commissioner of Social Sec.*, No. 3:11-cv-163, 2012 WL 3562023, at * 4 (S.D. Ohio Aug. 17, 2012) (Report and Recommendation), *adopted*, 2012 WL 3871944 (S.D. Ohio Sept. 6, 2012). The governing regulations define "medical opinions" as "assertions involving judgments about a patient's 'symptoms, diagnosis and prognosis'." *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(a)(2)). The record includes no "medical opinion" from Dr. Khan that the ALJ was required to evaluate under § 404.1527. Dr. Khan's treatment records include a discharge summary prepared the day after he performed plaintiff's May 1, 2012 spinal fusion. (Tr. 625). Dr. Khan imposed "[d]ischarge limitations" which required plaintiff to wear a cervical collar 23/24 hours a day, limited her to lifting no more than 5 pounds, and restricted her from performing overhead activities. (Tr. 625). There is no indication in the summary or in Dr. Khan's treatment notes that the post-surgery restrictions were an assessment of plaintiff's long-term functional capacity that were intended to remain in place following a recovery period. Absent any indication in the record that the post-surgery

---

[3] Plaintiff does not cite to a report in the record that sets forth an examining physician's opinion that she meets a listing.

restrictions assessed by Dr. Khan were more than temporary limitations, the discharge summary does not qualify as a "medical opinion" for purposes of § 404.1527. *Bass*, 499 F.3d at 510; *Rivera*, 2012 WL 3562023, at * 4 (record was not a "medical opinion" because it did not contain an opinion as to the severity of plaintiff's impairments, an assessment of the functional limitations imposed by those impairments, or an opinion as to whether plaintiff's impairments met or equaled a Listing).

Dr. Khan's records also include a January 19, 2013 treatment note wherein Dr. Khan reported that plaintiff had "some mild [neck] problems," "some degree of arthritis at every level," and disc protrusions, and he recommended that additional surgery was not in plaintiff's best interest but instead she should "have a permanent disability rating made and get on [] with life as best she can." (Tr. 935). The note does not qualify as an opinion because it does not include a medical judgment about plaintiff's symptoms and resulting limitations. *Id*. Plaintiff interprets Dr. Khan's recommendation that she obtain a "permanent disability rating" as a conclusion that she is "disabled," but Dr. Khan's recommendation is not reasonably construed as an opinion that plaintiff is totally disabled within the meaning of the Social Security laws. Even if the Court were to construe Dr. Khan's recommendation as an opinion that plaintiff is disabled, the ALJ would not be bound by the opinion. *See* 20 C.F.R. § 404.1527(d) ("[The Commissioner is] responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability" and a medical source's opinion that his patient is disabled is not "giv[en] any special significance."). *See also Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted). Thus, the ALJ did not err by declining to give "controlling" weight to a medical opinion rendered by Dr. Khan.

9

Plaintiff also argues that the ALJ erred by failing to give "controlling weight" to the

assessment of Dr. Wolf. (Doc. 8 at 19). Dr. Wolf examined plaintiff only one time on January

14, 2013, on behalf of the Ohio Bureau of Workers Compensation (BWC) in connection with her

workplace injury claim. (Tr. 1057-60). Dr. Wolf issued a Report of Work Ability and an

opinion in a discussion format after completing his examination. (Tr. 1057-1060). Dr. Wolf

opined that plaintiff had reached maximum medical improvement, further degenerative changes

could reasonably be expected with the passage of time, and medical and supportive treatment as

opposed to surgery was all that was currently required, although additional surgery could be

required in the future if plaintiff developed new neurological symptoms as a result of further

degeneration at other cervical levels. (Tr. 1060). Dr. Wolf opined that plaintiff could not return

"to her former position of employment. The demands of supporting her head and moving it

frequently, such as one would need to do in cosmetology, exceed her abilities to tolerate." (*Id.*).

Dr. Wolf assessed her as unable to bend, twist/turn, reach below the knee, push/pull, and perform

repetitive activities with the hands; able to occasionally (1-33% of an 8-hour workday)

squat/kneel, stand/walk, sit, and lift above the shoulders; and unable to lift more than five

pounds. (Tr. 941). He diagnosed plaintiff with degenerative cervical disc disease at multiple

levels and status post anterior fusions at C5-6 and C6-7. (*Id.*).

Because Dr. Wolf was an examining physician, the treating physician rule does not apply

to his opinion. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006).

Instead, his opinion is properly evaluated under the factors set forth in 20 C.F.R. § 404.1527.

The ALJ properly considered Dr. Wolf's assessment of plaintiff's functional limitations in

accordance with the regulatory factors. (Tr. 22-23). The ALJ found that Dr. Wolf's physical

examination findings, including intact sensation, only slightly weak grip strength, and minimal

10

reduction in side bending, did not support the "extreme limitations" Dr. Wolf assessed; his finding that plaintiff was unable to perform her former cosmetologist job was not entitled to any special significance since it was not an opinion on a medical issue; and his assessment restricting plaintiff to lifting no more than five pounds was entitled to "little weight" because it was inconsistent with other evidence, including plaintiff's statement to Dr. Stegman that she could lift 20 pounds. The ALJ was entitled to discount Dr. Wolf's opinion as to whether plaintiff could perform her prior job as a cosmetologist and the functional limitations Dr. Wolf assessed based on plaintiff's subjective allegations, the "mild" imaging results, and the lack of supporting physical examination findings, which the ALJ thoroughly reviewed in her written decision. (Tr. 18-20). *See* 20 C.F.R. § 404.1527(c) (supportability and consistency are factors to be balanced in deciding what weight to give a medical opinion).

Further, any error the ALJ may have committed by discounting Dr. Wolf's opinion was harmless. Dr. Wolf did not opine, and plaintiff does not argue, that the restrictions he assessed were inconsistent with plaintiff's ability to perform her past relevant work as a title clerk, a sedentary job. Thus, even if the ALJ had credited Dr. Wolf's opinion, the outcome of plaintiff's appeal would not necessarily have been altered. *See Kornecky*, 167 F. App'x at 507 (harmless error rule applies in disability appeals so that remand "in quest of a perfect opinion" where there is no reason to believe that remand might lead to a different result). In addition, insofar as the ALJ may have incorrectly construed Dr. Wolf's finding that plaintiff could not lift up to 10 pounds to be inconsistent with his finding that she was restricted to lifting no greater than five pounds (Tr. 22, citing Tr. 941), the error was harmless. The ALJ reasonably found Dr. Wolf's lifting restriction to be inconsistent with plaintiff's assessment less than two months earlier that

11

she could lift 20 pounds, which was incorporated into consultative examining physician Dr. Stegman's report.

Further, contrary to plaintiff's argument, the ALJ did not "ignor[e] the conclusions of . . . Dr. Stegman," who issued her report on November 29, 2012, after examining plaintiff one time. (Doc. 8 at 19, citing Tr. 1074-84). The ALJ thoroughly discussed Dr. Stegman's findings and her assessment of plaintiff's functional limitations. (Tr. 22). The ALJ accorded Dr. Stegman's opinion only "some weight" because it appeared to be based primarily on plaintiff's subjective complaints rather than on an independent evaluation of plaintiff's condition and resulting limitations on plaintiff's functioning. (*Id*.). The ALJ acknowledged that Dr. Stegman documented several abnormal examination findings in her report. (*Id*.). Dr. Stegman observed that plaintiff's gait was "slow and somewhat off balance" because she favored the right lower extremity; her back was slightly tender over the right parathoracic spine area; she had normal range of motion except for decreased external rotation of the right hip and restrictions to 20 degrees on the right and 45 degrees on the left with supine straight leg raising; her grip strength on the right was 6, 2, and 3 as compared to 8, 8 and 7 on the left; motor strength was "slightly diminished" at her deltoids bilaterally to approximately 4+ over 5; and imaging disclosed mild abnormal findings with no compression. (Tr. 1081-82). The ALJ also acknowledged that Dr. Stegman assessed restrictions that plaintiff could walk and stand for 60 minutes before developing low back pain and bilateral lower extremity pain and numbness into her toes; she could sit for two hours, "shifting her position before developing low back pain"; and she could lift approximately 20 pounds. (Tr. 1082). However, the ALJ reasonably discounted Dr. Stegman's assessment of plaintiff's limitations on the grounds Dr. Stegman's conclusions simply repeated plaintiff's complaints as set forth in the history section of the report and Dr. Stegman

12

did not cite any specific findings to support the particular limitations she assessed. (Tr. 22; *see* Tr. 1080, 1082). The ALJ was entitled to discount Dr. Stegman's conclusions as based on plaintiff's subjective complaints rather than on any independent analysis by Dr. Stegman. *See Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 689 (6th Cir. 2007).

Thus, the ALJ thoroughly evaluated the medical evidence and gave valid reasons for the weight she afforded the medical opinions of the examining physicians related to plaintiff's physical functional capacity and for her finding that these impairments did not preclude plaintiff from performing her past relevant work. (Tr. 18-24). The ALJ reasonably relied on objective medical findings and plaintiff's subjective reports, as well as inconsistencies between the two, to discount the assessments of the examining physicians and to adopt the assessments of the state agency reviewing physicians, Drs. Abraham Mikalov, M.D. and Dr. William Bolz, M.D. (Tr. 24, citing Tr. 91-107, 72-89). Plaintiff has not pointed to evidence in the record, including diagnostic test results or examination findings, to support greater physical restrictions than those found by the ALJ. Plaintiff indicates that the ALJ erred because the state agency physicians' reports "predated all medical treatment received and set forth in [Tr. 905-1103]." (Doc. 8 at 14). However, this is not accurate. The treatment records cited by plaintiff date back to a June 1, 2012 office visit to Forest Hills Medical Associates. (Tr. 930). Dr. Mikalov reviewed the record six months later on December 6, 2012 (Tr. 91-107), which is also after Dr. Stegman had prepared her assessment. (Tr. 1074-83). Dr. Bolz reviewed the record on March 4, 2013 (Tr. 72-89), eight months after plaintiff's June 2012 office visit and after both Dr. Stegman and Dr. Wolf had issued their assessments (Tr. 941, 1057-60). Plaintiff has not shown that the ALJ committed any other errors by discounting the opinions of the examining physicians and adopting the assessments of the state agency reviewing physicians regarding plaintiff's physical functioning.

13

Plaintiff raises two additional arguments in connection with her first assignment of error that do not relate to the alleged improper weighing of the physicians' opinions related to her physical functional capacity under 20 C.F.R. § 404.1527. Plaintiff alleges for the first time in her reply brief that the ALJ did not make sufficient findings to reject an opinion by an "examining source" that her condition met or equaled an impairment in the Listing of Impairments, 20 C.F.R., Pt. 404, Subpt. P, App. 1. (Doc. 17 at 4). Plaintiff does not identify the medical source or listing at issue; however, her argument appears to refer to the report of Dr. Bruce F. Siegel, D.O., who performed a file review and prepared a report at the request of plaintiff's counsel.[4] (Tr. 1100-1103). Plaintiff has not developed her perfunctory argument that the ALJ erred in evaluating Dr. Siegel's report. Plaintiff has therefore waived this argument. *See Kuhn v. Washtenaw County,* 709 F.3d 612, 624 (6th Cir. 2013) (the Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived") (citing *Caudill v. Hollan,* 431 F.3d 900, 915 n. 13 (6th Cir. 2005) (citing recent decisions that stand for these two related propositions)).

Plaintiff also argues that the ALJ gave "undue weight" to the opinion of the state agency reviewing psychologist dated December 2012 (Tr. 91-107) and "ignor[ed] the conclusions" of consultative examining source Dr. Jessica Twehues, Ph.D., who examined plaintiff on October 8, 2012. (Doc. 8 at 6-7, 14, 19, citing Tr. 897-904). Plaintiff has not shown that the ALJ improperly weighed Dr. Twehues' opinion. Dr. Twehues opined that plaintiff's symptomatology was of moderate severity and assessed plaintiff's mental functioning as follows:

---

[4] Dr. Siegel concluded that plaintiff met a musculoskeletal system listing, which he did not identify by number, and neurological system Listing 11.08. (*Id*). The ALJ thoroughly evaluated Dr. Siegel's report and gave it "little weight." (Tr. 23-24).

14

- "Due to depressed mood and anxiety, she is likely to have difficulty maintaining focus for prolonged periods of time and to be easily distracted by negative thoughts and worry, slowing her performance on simple, repetitive tasks";

- "Due to depressed mood and anxiety, she may have difficulty relating positively to coworkers and supervisors. However, she is expected to take orders from supervisors as needed. . . ."; and

- "Due to depressed mood and anxiety, she is likely to have some difficulty coping with major changes in her work routine. Her preoccupation with her physical health is likely to further interfere with her distress tolerance. She may have some difficulty coping with some everyday minor workplace pressures when feeling particularly down or anxious."

(Tr. 903).

The ALJ gave Dr. Twehues' assessment "limited weight" (Tr. 21) but accounted for

plaintiff's mental limitations by including the following restrictions in the RFC finding:

"[Plaintiff] should not be required to perform tasks involving mentoring, persuasion or conflict

resolution. She is limited to routine type work where there are no demands for fast, machine

paced, high production quota type work or piece rate type work. The [plaintiff] would be off

task 10% of the time." (Tr. 17). Plaintiff has not shown how these restrictions are inconsistent

with the limitations found by Dr. Twehues. Specifically, plaintiff has not explained why the

inability to concentrate for prolonged periods of time and cope with major workplace changes is

inconsistent with an RFC for routine work that does not involve a fast machine pace or a high

production quota and that would allow plaintiff to be off task a portion of the day. Nor does

plaintiff point to a mental functional assessment by a treating or other medical source, mental

health treatment notes, or other record evidence that is inconsistent with these specific findings

by the ALJ. Thus, plaintiff has shown no error in this regard.

Plaintiff's first and third assignments of error should be overruled.

15

## 2. The ALJ's evaluation of plaintiff's spinal impairments and radiculopathy

Plaintiff alleges as her second assignment of error that the ALJ failed to properly evaluate

her multi-level degenerative disc disease and resulting cervical and lumbar radiculopathy. (Doc.

8 at 2). Plaintiff did not present a cogent argument in support of this alleged error in the

statement of errors. Plaintiff alluded to a possible step two error involving the thoracic and

lumbar spine when summarizing the ALJ's findings in the statement of errors by making the

following assertions:

The ALJ failed to include any references to complaints referable to her lumbar or
thoracic spine, as being severe; although each of which are also severe
impairments, the record establishing she has undergone a minimum of 19 ESI
injections to the thoracic, lumbar, and cervical spine during the period for which
disability has been alleged.

However, notwithstanding finding complaints referable to her lumbar or thoracic
spine did not constitute a severe impairment, such were discussed on page 7 of the
ALJ's decision in reference to the records of Dr. Atluri [Tr. 547-71, 880-85,
1061-73], noting complaints of pain radiation to the bilateral buttocks and legs,
back pain was greater than leg pain and having undergone cervical, thoracic, and
lumbar epidural steroid injections [Tr. 547-71, 880-85, 1061-73, 1084-88, 1089-
91, 1095-99] and was likewise included within the discussion of the findings of
Dr. Stegman as reported in [Tr. 1074-83]. The ALJ speculated Dr. Stegman's
conclusions were not supported by the evidence in the record nor the examination
performed; the ALJ speculated it appeared Dr. Stegman's conclusions were a
recitation of the complaints as reported at the time of the examination.

(Doc. 8 at 5). Plaintiff did not further develop this argument in the arguments section of her

statement of errors. However, plaintiff clarified in the reply brief that she alleges as her second

assignment of error that the ALJ erred at step two of the sequential evaluation process by failing

16

to find her "thoracic/lumbar spine" condition to be a severe impairment.[5] (Doc. 17 at 4-7).

Plaintiff has waived her second assignment of error by failing to adequately present her argument in the statement of errors. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument). *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). As noted above, plaintiff referenced a possible step two error when summarizing the ALJ's findings in the statement of errors, but she did not present a cogent argument to support an allegation of a step two error by the ALJ.

Even assuming plaintiff has not waived her step two argument, the ALJ did not commit reversible error by failing to find plaintiff's thoracic and lumbar spine conditions to be severe impairments. The regulations define a severe impairment or combination of impairments as one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. § 404.1521(b)(1). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*,

---

[5] Plaintiff also argues in the reply brief in connection with the second assignment of error that the ALJ did not fully account in the RFC finding for the mental limitations imposed by plaintiff's situational anxiety, which the ALJ did find to be a severe impairment. (Doc. 17 at 6). Plaintiff has not developed this argument, and it is not clear what connection it has to the alleged step two error. The Court therefore has not addressed plaintiff's argument in connection with her second assignment of error.

736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ finds that the claimant "has at least one other severe impairment and continues with the remaining steps of the disability evaluation." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "This rule is predicated on the notion that the ALJ 'properly could consider [the] claimant's [non-severe impairments] in determining whether [the] claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity." *Id*. (quoting *Maziarz*, 837 F.2d at 244).

Here, plaintiff contends that the ALJ failed to recognize that her lumbar and thoracic spine conditions are "severe" impairments, despite the epidural steroid injection (ESI) treatments she received for the condition for over two years from 2011 to 2013 and the treatment notes documenting her complaints of back pain and radiculopathy. (Doc. 17 at 2, 6). The ALJ determined at step two of the sequential evaluation process that plaintiff suffered from the severe physical impairments of degenerative disc disease of the cervical spine status post fusion (C5-6 and C6-7) and osteoarthritis. (Tr. 14). After making this finding, the ALJ continued to step four of the evaluation process and considered plaintiff's severe and non-severe conditions, including her lumbar/thoracic conditions, before determining that plaintiff was not

18

disabled. Plaintiff concedes that the ALJ acknowledged her treatment history for her lumbar/thoracic complaints when discussing the reports of treating physician Dr. Sairam Atluri, M.D., and examining physician Dr. Stegman. (Doc. 8 at 5, Doc. 17 at 6, citing Tr. 18; *see* Tr. 547-71, 880-85, 1061-73 (Dr. Atluri treatment notes); Tr. 1084-88, 1089-91 (Pain Management Association treatment notes); Tr. 1095-99 (Interventional Spine Specialists/Dr. Atluri treatment notes); Tr. 1074-83 (Dr. Stegman notes)). Plaintiff has not directed the Court to any additional evidence that indicates how inclusion of her lumbar/thoracic conditions as severe impairments would have changed the ALJ's assessment of her functional limitations. Accordingly, the ALJ did not commit reversible error by failing to find that plaintiff's lumbar/thoracic conditions constitute "severe" impairments as that term is defined under the Social Security regulations. *Cf. Hill v. Commissioner of Social Sec.*, 560 F. App'x 547 (6th Cir. 2014) (plaintiff did not show that inclusion of PTSD as a severe impairment would have changed the ALJ's assessment of her functional limitations, and plaintiff's cursory argument that the ALJ failed to denote the condition as a severe impairment was therefore waived).

Plaintiff also makes the conclusory assertion that the ALJ erroneously failed to consider the combined effects of her impairments. (Doc. 17 at 5-6). Plaintiff posits no specific arguments in support of this contention and has not shown that the ALJ committed an error in this regard. In any event, "[a]n ALJ's individual discussion of multiple impairments does not imply that [s]he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet" a listed impairment. *Cf. Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). Here, the ALJ specifically found that plaintiff does not have a "combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 15). Thus,

plaintiff's argument finds no support in the record.

Plaintiff's second assignment of error should be overruled.

### 3. The ALJ's credibility determination

Plaintiff alleges as her fourth assignment of error that the ALJ erred in assessing her credibility.  Plaintiff alleges that the ALJ did not provide specific reasons for rejecting her testimony as required under Social Security Ruling 96-7p.  (Doc. 8 at 25).

Title 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996)[6] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain.  First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c), SSR 96-7p.

---

[6] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms."  *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p).  There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."[7] *Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

The ALJ gave specific reasons for her credibility finding in this case, and her reasons are substantially supported by the evidence of record. In evaluating plaintiff's credibility, the ALJ reviewed plaintiff's written statements and testimony and reasonably concluded that while her impairments could "be expected to produce some discomfort and functional limitations," the objective medical evidence did not support her allegations regarding the severity, chronic nature, and frequency of her symptoms. (Tr. 18). The ALJ properly based her credibility determination on the objective medical evidence, which included: (1) imaging results that showed mild abnormalities, no neural foraminal stenosis, only "borderline mild" central canal stenosis at C6-7, and no cord compression or "compressive discopathy" (Tr. 19, 25); (2) evidence showing "good strength throughout her extremities" (Tr. 25); and (3) Dr. Khan's report in his June 2014 treatment notes that plaintiff appeared to have a "solid surgical fusion" (Tr. 25, citing Tr. 1111-13). (Tr. 19-25). In addition, the ALJ reasonably discounted plaintiff's credibility based on her failure to obtain mental health counseling for her situational anxiety, which was diagnosed in

---

[7] Plaintiff alleges that the ALJ "failed to provide clear and convincing reasons for rejecting" plaintiff's testimony (Doc. 8 at 25), but this is not the ALJ's burden.

21

August 2012.[8] (Tr. 21, citing Tr. 613). *See* 20 C.F.R. § 404.1529(c)(3)(v) (factors relevant to evaluation of the claimant's symptoms include treatment other than medication the claimant has received for relief of the symptoms). Finally, the ALJ properly relied on plaintiff's daily activities to discount her complaints of debilitating pain and other symptoms. (Tr. 25). Plaintiff reported in June 2012 that she was walking four miles three times a week following her surgery (Tr. 19, 25 citing Tr. 575), and Dr. Khan's treatment notes dated June 2014 document that plaintiff was "very active" (Tr. 25, citing Tr. 1112).

Thus, plaintiff has not shown that the ALJ committed any error in connection with the assessment of her credibility. The ALJ thoroughly evaluated the evidence of record and gave reasons for her credibility finding which are substantially supported by the record. The ALJ's credibility finding is entitled to deference. Plaintiff's fourth assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED.**

Date : 2/23/17

Karen L. Litkovitz
United States Magistrate Judge

---

[8] While the ALJ is precluded from drawing inferences about a claimant's mental health "symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment," *see LaRiccia v. Commr. of Soc. Sec.*, 549 F. App'x 377, 386-87 (6th Cir. 2013) (quoting SSR 96-7p), that bar did not apply here because plaintiff did not explain her failure to seek treatment for her mental health condition.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANGELA CHRISTINE TODD,                     Case No. 1:16-cv-541
     Plaintiff,                          Dlott, J.
                                           Litkovitz, M.J.
  vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).